Leroy E. **BARKER**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 281S38.

Supreme Court of Indiana.

Oct. 14, 1982.

Rehearing Denied Dec. 20, 1982.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Leroy E. Barker, was convicted by a jury in the Marion Superior Court, Criminal Division II, of the crimes of burglary, a class B felony, and theft, a class D felony. He was subsequently sentenced by the trial court to seventeen years for the burglary conviction and to four years for the theft. The sentences were ordered to be served concurrently. Appellant now raises in this direct appeal the following four issues:

1. whether the trial court erred by admitting into evidence, on rebuttal and for impeachment purposes only, Appellant's refuted confession after having ruled that said confession could not be admitted by the State in its case-in-chief;

2. whether the trial court erred by admitting into evidence a copy of a document because the State claimed that it had misplaced the original;

3. whether the trial court erred by denying Appellant's Mistrial Motion raised after one witness inadvertently made one comment which could possibly have been interpreted by the jury to mean that Appellant had been previously involved in other crimes; and

4. whether the trial court erred by giving to the jury its Final Instruction No. 10 which directed that the jury "must" find Appellant guilty if the State had "proven beyond a reasonable doubt the material allegations of either of the charges".

The record shows that on August 5, 1979, a break-in occurred at the residence of Alice B. McKinney located at 3040 North College Avenue, Indianapolis, Indiana. Mrs. McKinney lived there with four of her five children. After the burglary, the interior of her home was described by several witnesses as "a mess" in that the house had been ransacked with things thrown about and drawers dumped. According to the victims, many items of personal property were missing, including some assorted jewelry and a stereo component set comprised of two large speakers, an AM-FM radio, a tape-player and a turn-table. Two glass panels were removed from the back door, thereby allowing entry by reaching through the door and unlocking it from the inside. The door had been locked when the McKinneys last left.

I

Leroy Barker was fifteen years-old at the time of the commission of these crimes and was sixteen when subsequently arrested. The Juvenile Court waived its jurisdiction over Barker allowing him to be charged and tried as an adult. On January 9, 1980, Barker was taken from the Juvenile Center, where he was being detained on an unrelated charge, to the office of the Juvenile Branch of the Indianapolis Police Department for questioning about the instant offenses. Barker was informed that he was a suspect in these crimes. Detective Sergeant Watford testified that in anticipation of Barker's interrogation, he telephoned Barker's mother and requested that she meet her son at the police station and accompany him during the interrogation. When Barker's mother said that she could not come at that time, Watford requested that she send someone to act as her son's guardian. Mrs. Barker sent her daughter, Barker's eighteen year-old sister. The police admit that neither of Barker's parents were present with Barker during his interrogation on January 9th. Barker's sister was present, however, and both she and Barker were fully advised about Barker's constitutional rights according to *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Both were also informed that Barker had the right to have one or both of his parents present if he desired. Both Barker and his sister agreed to Barker's waiver of his rights and they both signed an advisement of rights and waiver form to that effect. As a result of his interrogation, Barker made an oral confession to the instant crimes and was arrested.

After the commencement of Barker's trial, a hearing was held during which the trial judge suppressed Barker's confession. The trial judge specifically ruled that the State could not put Barker's confession into evidence during the State's case-in-chief since the police had violated this Court's pronouncements in *Lewis v. State,* (1972) 259 Ind. 431, 288 N.E.2d 138. *See also:* Ind. Code § 31–6–7–3 (Burns 1980); *Hall v. State,* (1976) 264 Ind. 448, 346 N.E.2d 584, *reh. denied.* During the hearing, the State informed the Defense, with the trial court's tacit approval, that should Barker testify in his own behalf, the State could, and would, use his confession to impeach him if his testimony was in any way contrary to his confession. Barker subsequently testified in his own behalf and denied having been involved in the burglary and theft. After the Defense rested, the State in rebuttal presented Detective Watford who put Barker's confession into evidence. The confession was allowed for the purpose of proving Barker's prior inconsistent statements. Barker now contends that his confession was inadmissible for any purpose since the

police did not comply with the requirements of *Miranda* and *Lewis*. He further claims that his confession was involuntarily given. He neither alleges nor shows, however, that the confession was obtained by duress, by threat, or by any other kind of undue influence. The State argues that the trial court properly admitted the confession in rebuttal to show Barker's prior inconsistent statements. The State relies upon *Harris v. New York*, (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 and *Purcell v. State*, (1980) Ind.App., 406 N.E.2d 1255, *on rehearing* (1981) Ind.App., 418 N.E.2d 533.

In *Harris*, the United States Supreme Court faced the same issue as is presented to us here. Specifically, that Court considered Defendant Harris' claim that a statement made by him to police under circumstances rendering the statement inadmissible to establish the State's case-in-chief may not be used to impeach his credibility. A New York trial court determined that the police had elicited from Harris certain inculpatory statements without having first advised him of his constitutional right to counsel. Notwithstanding, Harris never claimed that his statements were coerced or involuntarily made. At trial, the prosecution recognized the general inadmissibility of the statements and made no effort to use them in its case-in-chief. When Harris took the stand in his own defense, however, he gave testimony which partially contradicted his previously made statements. The trial judge then permitted the State to impeach Harris' credibility by allowing the State to make extensive use of the prior statements during its cross-examination of Harris. The trial judge was careful, though, to instruct the jury that the statements attributed to Harris by the prosecution could be considered only in passing on Harris' credibility and not as evidence of his guilt. In their closing summations, both counsel argued the substance of the impeaching statements before the jury. Affirming the trial court and the New York Court of Appeals, the United States Supreme Court held the following:

"It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards. \* \* \*

The impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States v. Knox*, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); cf. *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. [footnote omitted] Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

*Harris v. New York*, 401 U.S. at 224–225, 91 S.Ct. at 645, 28 L.Ed.2d at 4.

In *Purcell*, our Court of Appeals followed *Harris* to reach the same result as did the U. S. Supreme Court. *Purcell* involved a juvenile whose statement to the police was

suppressed by the trial judge because the police had not abided by the dictates of *Lewis.* The trial judge, however, advised the defendant that his statement could still be used by the State in rebuttal should the defendant take the stand and testify contrary to his previously tendered statement. On rehearing, the Court of Appeals emphasized that the defendant's prior inconsistent statements were admissible because they met the legal standards of trustworthiness required for admissibility, as stipulated by *Harris.*

■ In the instant case, the record shows that Appellant Barker was allowed to consult with his older sister, who was acting in lieu of their mother. Being eighteen years of age, she admittedly did not show the interest and concern that might be expected of a parent or guardian as required by *Lewis.* The evidence does show, however, that Barker was given his full *Miranda* rights which he indicated he understood and was agreeable to waiving. Further, the evidence shows that the police talked to Barker for a period of approximately forty-five minutes with only five to ten minutes of that time being involved with Barker's actual statement. Barker was sixteen years of age and did not appear to be suffering from any mental or emotional disability. He was neither verbally or physically threatened nor abused in any manner and he gave every appearance of understanding the *Miranda* rights related to him. He was not promised anything, nor was he induced in any way to give a statement. Barker does not deny these facts. The legal standards of trustworthiness were thus satisfied. The evidence also shows that the trial court was careful to insure that Barker's prior inconsistent statements were used only for purposes of impeaching Barker's credibility. In what apparently was its Final Instruction No. 9, the trial court instructed the jury in the following way:

"There has been evidence introduced that the Defendant, Leroy E. Barker may have made prior statements which were inconsistent or contradictory to his sworn testimony in court. The Defendant's prior statements were ruled as inadmissible as evidence against the Defendant. The court has ruled that said statements may be used to show that the Defendant Leroy E. Barker may have made a prior inconsistent statement so that the jury may weigh the Defendant's credibility and the prior statements are not to be considered as evidence of the Defendant's guilt."

Finding the legal standards of trustworthiness satisfied and finding some assurance that the jury considered Barker's confessional statement for impeachment purposes only, we hold that the trial court properly admitted Barker's statement into evidence as rebuttal to the contradictory testimony he proffered on the witness stand.

II

■ Barker also claims that the trial court erred by admitting into evidence State's Exhibit No. 3. Said Exhibit consisted of a copy of an advisement of rights and waiver form which was dated January 9, 1980, and was signed by Detective Watford, Leroy Barker and Shirleen Barker, Leroy's sister. At trial, Leroy acknowledged that his signature appeared on the form, but denied having ever seen the form before. Detectives Watford and Suesz both testified that Watford, Leroy and Shirleen each personally signed the original and that the signatures apparent in Exhibit No. 3 were authentic copies thereof. Barker does not contest the accuracy or authenticity of State's Exhibit No. 3. His only objection is that the Exhibit violates the best evidence rule since a copy of the form was put into evidence instead of the original. The record shows that the State put into evidence an exact copy of the original form because the original had been misplaced by the Prosecutor's office and could not be located. Barker in no way shows that he was prejudiced by the admission of this Exhibit in its duplicative condition. Since there is no question about whether the Exhibit was authentic or accurate, we find that any error assigned to its admission is no more than harmless. *Sanders v. State,* (1976) 264 Ind. 688, 691, 348 N.E.2d 642, 644.

## III

Barker next contends that the trial judge committed reversible error by refusing to grant a mistrial as requested after Alice McKinney made a certain statement during her direct examination. Mrs. McKinney was called by the State to testify in its case-in-chief. Her partial testimony was as follows:

"Q. Mrs. McKinney, do you know Leroy Barker?

A. Yes.

Q. How do you know him?

A. I know his mother.

Q. Okay, but, do you know him?

A. Uh, yes.

Q. Okay. Had you ever met him, uh, at any previous time before today?

A. Yes.

Q. Okay. What, through his mother, then?

A. Uh huh. I taken 'em to Juvenile two or three times. She didn't have a way.

Q. Okay. Uh, now, . . . . "

It is Barker's contention that Mrs. McKinney's answer referring to Barker and "Juvenile" informed the jury that Barker had been involved in other criminal activity. He argues that such a reference in the presence of the jury placed him in a position of grave peril. Barker also argues that the trial court's failure to admonish the jury or to instruct the jury concerning McKinney's answer was error and that even if the court had admonished the jury, the error would not have been adequately dissipated.

■ Our initial question is whether Mrs. McKinney's statement was so prejudicial that it warranted a mistrial. It is well established, of course, that the granting of a mistrial lies within the discretion of the trial court. The trial court's decision will be reversed only where an abuse of judicial discretion can be proven. The burden on appeal is upon the defendant to show that the defendant was placed in grave peril by the denial of the mistrial motion. *Blood v. State,* (1980) Ind., 398 N.E.2d 671, 673. The State's contention that McKinney's state-

ment did not specifically mention any criminal activity is well taken. This fact clearly distinguishes this case from those cases in which reference is made to a defendant's prior conviction or jail sentence. If the jury actually heard and understood Mrs. McKinney's statement, they may have inferred that Barker had been previously taken to juvenile court for some reason. The jury could also have reasonably supposed that Barker was at juvenile court because he had been charged with some delinquent activity. Regardless, the record shows that Barker subsequently took the stand in his own behalf and, without objection, specifically detailed on cross-examination that he had been previously convicted of theft. In view of the facts and circumstances here, including Barker's own testimony about his prior criminal activity, it can hardly be said that Mrs. McKinney's statement put Barker in graver peril than Barker would have been in but for the statement. There is no allegation or inference that this statement was purposely elicited by the State to improperly influence the jury with inadmissible evidence. Accordingly, we find that the trial judge did not err in overruling Barker's Motion for Mistrial.

■ When the trial judge informed the parties that Mrs. McKinney's statement did not merit a mistrial, he specifically indicated to both counsel that he was willing to admonish the jury if either party deemed an admonishment appropriate. In dialogue with the trial court, Barker's counsel stated that an admonishment would only re-emphasize the matter to the jury and compound the problem. The trial court agreed. Since Barker never requested the trial court to admonish the jury, we conclude that Barker waived the admonition issue. *See generally: Boyd v. State,* (1982) Ind., 430 N.E.2d 1146, 1149. So too, we conclude that Barker waived any issue arising from the trial court's withdrawal of its final instruction concerning juvenile proceedings. We find the record shows no objection was raised when the trial court informed the parties it was withdrawing the instruction.

## IV

Barker lastly objects to the trial court's Final Instruction No. 10. His trial for the instant crimes was conducted on September 29, 1980. After the jury had been duly sworn, the trial court instructed them with Preliminary Instructions numbered 1 through 6. Later that same day and after all of the testimony and arguments, the trial court instructed the jury with Final Instructions numbered 7 through 14. Included with the Final Instruction was an Instruction that the jury should consider the Final Instructions along with the Preliminary Instructions in arriving at its verdicts. Final Instruction No. 10 was:

"You must first determine the guilt or innocence of the Defendant and if you have reasonable doubt as to guilt of the crime charged, or any offense included thereunder, then you must find the Defendant not guilty. However, *if you find that the State has proven beyond reasonable doubt the material allegations of either of the charges against the Defendant, or of any offense included thereunder, then you must find the Defendant guilty of that charge.* Proper verdict forms will be furnished you for your use; furthermore, your sole responsibility is to determine innocence or guilt herein, and should there be a finding of guilty, sentencing responsibility is that of the trial judge alone." (emphasis added).

Barker objects to Instruction No. 10 because of its use of the mandatory word "must". He argues that the trial court invaded the province of the jury with this Instruction in contravention of Ind.Const. art. 1, § 19. This provision of our Constitution directs that the jury shall have the right to determine the facts and the law in all criminal cases. Barker further argues that this Instruction intimates the trial court's opinion about Barker's guilt which influenced the jury's mind in favor of finding him guilty. Finding the trial court to have instructed the jury that the court did not intend by its rulings or otherwise to indicate any opinion on this case, we summarily reject this last contention as meritless.

This Court has held that an instruction in a criminal case which orders the jury to return a guilty verdict upon their finding certain facts invades the jury's constitutional prerogative. *Pritchard v. State,* (1967) 248 Ind. 566, 575, 230 N.E.2d 416, 421. We subsequently distinguished our *Pritchard* holding, however, in *Loftis v. State,* (1971) 256 Ind. 417, 269 N.E.2d 746. In *Loftis,* the trial court instructed the jury that they "should" convict the defendant if they believed that all of the essential elements of the charged crime were proven beyond a reasonable doubt. We found this instruction not violative of *Pritchard* because the trial court further instructed the jury that it was the judge of the law. The trial court in *Loftis* also set forth the material allegations which the State was required to prove for a conviction.

More recently, this Court approved an instruction which was almost identical to the instant Instruction No. 10. *Taylor v. State,* (1981) Ind., 420 N.E.2d 1231. The challenged instruction in *Taylor* was:

"You much (sic) first determine the guilt or innocence of the defendant, and if you have reasonable doubt as to guilt of the crime charged, or any offense included thereunder, then you must find the defendant not guilty.

"However, *if you find that the State has proven beyond reasonable doubt the material allegations of the charge against the Defendant, or of any offense included thereunder, then you must find the Defendant guilty.* Proper verdict forms will be furnished you for your use; furthermore, your sole responsibility is to determine innocence or guilt herein, and should there be a finding of guilty, sentencing responsibility is that of the trial judge alone." (Emphasis added.)

Defendant Taylor claimed that the giving of this instruction constituted a fundamental error. He could make no other argument having waived review on other grounds by his failure to object to the instruction at trial. We noted:

"The text of this instruction places it somewhere between the condemned instruction considered in *Pritchard v. State,* (1967) 248 Ind. 566, 230 N.E.2d 416, which improperly mandated the jurors to return a verdict of guilty if they determined certain specifically mentioned facts, and one which might simply (and in all likelihood properly) state that if the jury has a reasonable doubt of guilt it must acquit, but that if it has no such reasonable doubt it must convict. This instruction is more general and abstract than the one in *Pritchard,* insofar as it refers to a determination of 'the material allegation of the charge', rather than to a factual allegation as specified by the erroneous instruction in *Pritchard,* that the victim 'did sicken, languish and die.' Furthermore, it was accompanied by an instruction that stated:

### INSTRUCTION NO. 3

Under the law of this State you are the sole judges of both the law and evidence and you must presume that the defendant is innocent. You must continue to believe he is innocent throughout the trial, unless the State proves that the Defendant is guilty, beyond a reasonable doubt, of every essential element of the offense charged. The burden of proof herein is on the State alone and never shifts to the Defendant."

*Taylor v. State,* 420 N.E.2d at 1236. We held that the challenged instruction in *Taylor* did not represent fundamental error since we found that the error was not apparent on the record and was not gross in character. Further, we found that the error was not offensive to any of our fundamental precepts of criminal justice which include the jury's absolute right to determine the law according to Ind.Const. art. 1, § 19.

■ Despite Instruction No. 10 being mandatory in nature, we do not find that the "must" language of this Instruction constitutes reversible error. Specifically, we find no fundamental error here because

we find in the record no apparent error which is gross in character. Further, we find this Instruction, in the context of this case, proper according to *Taylor.* Although Barker claims that the trial court's Preliminary Instruction No. 2 was insufficient to ameliorate the alleged defect in the trial court's Final Instruction No. 10, we disagree. Instruction No. 2 was as follows:

"The Indiana statute defining the offense charged, including the elements contained therein, insofar as it is applicable, reads as follows:

.     .     .     .     .

### BURGLARY Count I

'A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits Burglary, a Class C Felony. However, the offense is a Class B felony if . . . the building or structure is a dwelling . . . '

The elements of this crime are that the defendant must:

1. break and enter
2. the building or structure of another person
3. with the intent to commit a felony in it

To constitute a "breaking" for the purposes of this statute, it is not necessary to show forcible entry, only that some physical act was used to gain entry.

.     .     .     .

### THEFT Count II

'A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony.'

The elements of this crime are that the defendant must:

(1) knowingly or intentionally
(2) exert control over property
(3) of another person
(4) where the control is unauthorized
(5) with intent to deprive the other person of any part of the use or value."

Instruction No. 2 clearly informed the jury on the elements of Class B felony burglary and class D felony theft for which Barker was charged. Accordingly, Instruction No. 2 properly set before the jury the material allegations which the State was required to prove for conviction on these crimes. In addition, the trial court instructed the jury with the following Preliminary Instruction No. 3:

"Under the law of this State you are the sole judges of both the law and the evidence and you must presume that the defendant is innocent. You must continue to believe he is innocent throughout the trial, unless the State proves that the defendant is guilty, beyond a reasonable doubt, of every essential element of the offense charged. The burden of proof herein is on the State alone and never shifts to the defendant.

Since the defendant is presumed to be innocent, he is not required to present any evidence to prove his innocence, nor to prove, do, or explain anything. If at the conclusion of the trial, there remains in your mind a reasonable doubt concerning the defendant's guilt, you must find him not guilty."

The first paragraph of Preliminary Instruction No. 3 is identical to Instruction No. 3 in *Taylor*. The second paragraph serves to further qualify and make conditional the jury's mandate from Instruction No. 10. We find that Instruction No. 10 is within the scope of our holding in *Taylor*. We therefore hold that the jury was properly instructed and that there was no error in the giving of Instruction No. 10. Leroy Barker stands duly convicted of burglary and theft.

The trial court is affirmed in all respects.

GIVAN, C. J., and DeBRULER, J., concur.

HUNTER, J., dissents with separate opinion in which PRENTICE, J., concurs.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion, for I am unable to join its conclusion that "the jury was properly instructed and that there was no error in the giving of Instruction No. 10." The instruction was mandatory in nature, violated Article 1, Section 19, of the Indiana Constitution, and should not have been given. It is well settled that the effect of a bad instruction is not cured by giving a good one. Consequently, defendant should be granted a new trial.

It is true *Taylor v. State,* (1981) Ind., 420 N.E.2d 1231, involved an instruction virtually identical to that before us. There, however, the defendant had failed to object to the instruction at the time it was given. Defendant sought to gain appellate review of the propriety of the instruction under the fundamental error doctrine, which permits appellate review of a question not properly preserved for appeal. *See, e.g., Kleinrichert v. State,* (1973) 260 Ind. 537, 297 N.E.2d 822; *Winston v. State,* (1975) 165 Ind.App. 369, 332 N.E.2d 229. In *Taylor,* this Court found only that in the context of the circumstances present there, the criteria necessary to invoke the fundamental error doctrine were not satisfied. For the unanimous Court, Justice DeBruler explained that the Court would not reach the merits of the instruction:

"While an argument can be made strongly supporting the contention that the challenged instruction was erroneous, the instruction's particular text and use within the confines of this case does not support the conclusion that the giving of it was fundamental error, that is, error apparent on the record, gross in character, and offensive to our concepts of criminal justice which include the right of the jury to determine the law unimpeded under Art. 1, § 19, of the Indiana Constitution.

"The failure to object has waived review of this issue." *Taylor v. State, supra,* 420 N.E.2d at 1236.

Finding defendant had waived the claim of error, this Court nonetheless recognized that the argument against the instruction was a strong one.

*Taylor* is inapplicable here, however. The defendant before us did object at trial

to the instruction. He has preserved his claim for review and it must be assessed outside the context and principles of the fundamental error doctrine. The majority's reliance on *Taylor* is misplaced, and its statement "Specifically, we find no fundamental error here ..." is outside the issue before us.

In *Pritchard v. State,* (1967) 248 Ind. 566, 230 N.E.2d 416 (Arterburn, J., dissenting), the jury had been instructed that if it found that the defendants "were guilty of cruelty or neglect" and had caused their child to "sicken, languish, and die," then "you shall find such defendant guilty of involuntary manslaughter." *Id.,* 248 Ind. at 568, 230 N.E.2d at 417. We concluded that the mandatory nature of the instruction violated Article 1, § 19, of the Indiana Constitution, wherein it is provided: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." We explained the conflict between the instruction and the constitutional provision in the following manner:

"While it is the duty of the court to give instructions as to the law of the case, it is error to give instructions in criminal cases which seek to impose restrictions upon the minds and consciences of the jury when such instructions conflict with an express provision of the Indiana Constitution. *Schuster v. State* (1912), 178 Ind. [320] 323, 99 N.E. 422.

"Under our Constitution, a judge who gives the jury a binding, specific and mandatory instruction on the facts and law in a criminal case commits error thereby just as surely as the judge who instructs a jury that they may 'disregard the law' as laid down by the court. 53 Am.Jur. 600, n. 16; 72 ALR 911. A mandatory instruction in a criminal case that would, in fact, bind the minds and consciences of the jury to return a verdict of guilty upon finding certain facts, clearly invades the constitutional province of the jury. We arrive at this conclusion because the clear and plain language of our Constitution, in declaring the right and power of the jury to determine the law in criminal cases, has a real and

specific application to criminal prosecutions in this state." *Pritchard v. State, supra,* 248 Ind. at 575, 230 N.E.2d at 421.

Subsequently, as the majority recognizes, we distinguished our *Pritchard* holding in *Loftis v. State,* (1971) 256 Ind. 417, 269 N.E.2d 746. The instruction involved in *Loftis* informed the jurors that if they believed the state had proved the elements of the crime beyond a reasonable doubt, then they "*should* convict the defendants." *Loftis v. State, supra,* 256 Ind. at 418, 269 N.E.2d at 746–7 (emphasis added). Obviously, as we held in *Loftis,* the term "should" was not a mandatory term; that fact, coupled with an instruction that the jurors were the exclusive judges of the law and facts, took the circumstances present in *Loftis* outside the purview of those present in *Pritchard.*

It should be recognized that our reliance on the curative effect of other instructions given by the trial court in *Loftis* was predicated on the fact that the trial court had used the nonmandatory phrase "should" in the challenged instruction. In *Pritchard,* where the court had employed the imperative "shall," we rejected in unequivocal fashion the proposition that the error of giving a mandatory instruction could be cured by another instruction informing the jury that it was the exclusive judge of the law and facts:

"Where the jury have been instructed under the Constitution that the jury have the right to determine the facts and the law, another instruction, mandatory in nature, taking that right and power away from them is not cured by the former. *Newport v. The State* (1894), 140 Ind. 299, 39 N.E. 926." *Pritchard v. State, supra,* 248 Ind. at 575, 230 N.E.2d at 421.

Here, the instruction employed by the trial court informed the jury that if it found the state had proven beyond a reasonable doubt the elements of the crime charged, then "you [the jurors] *must* find the Defendant guilty." (Emphasis added.) Obviously, the word "must" is every bit as mandatory as the word "shall" employed in *Pritchard.*

Notwithstanding the majority's express recognition that the word "must" is mandatory—unlike the word "should" employed in *Loftis*—it nonetheless finds support for its conclusion that the jury was "properly instructed" in the fact that the trial court, via another instruction, informed the jurors that they were the "sole judges of both the law and evidence." The majority's usage of a good instruction to cure an improper and mandatory one contravenes our ruling in *Pritchard,* as heretofore quoted, as well as other precedent. *See, e.g., Brewer v. State,* (1969) 253 Ind. 154, 252 N.E.2d 429; *Mundy v. State,* (1966) 247 Ind. 224, 214 N.E.2d 389; *Harrington v. State,* (1980) Ind.App., 413 N.E.2d 622. It cannot be assumed that in light of the mandatory instruction—"you must convict"—it understood its constitutional prerogative. *Pritchard v. State, supra; Brewer v. State, supra; Harrington v. State, supra.*

The only distinction of any import which can be drawn between the instant case and Pritchard is the fact that here, the mandatory instruction was more clinically stated. Unlike *Pritchard,* where the instruction included the words "sicken, languish, or die," the mandatory instruction at issue directed the jurors that they must convict the defendant if the state satisfied its burden to prove "the elements" of the crime.

It is, of course, axiomatic that instructions should not be framed in terms that might appeal to the emotions of the jury. In that respect, the instruction at issue represents an improvement on the instruction involved in *Pritchard.*

The distinction does not alter the mandatory nature of the term "must," nor does it change the fact that the instruction at issue is a mandatory one. Whether stated in legal or factual terms, an instruction which directs the jury that they "must convict" if they find such-and-such is true violates Article 1, Section 19, for the jury has the constitutional right to determine both "the law and the facts." *Id.* The instruction given here violated Article 1, Section 19, and should not have been given.

As we recognized in *Pritchard,* there are those who may regard Article 1, Section 19, as an archaic constitutional precept which no longer bears consequence:

"If to some it appears that Art. 1, § 19 is an 'outmoded relic,' is 'archaic,' or is 'anachronistic,' (views in which we do not necessarily concur) then there is a very clear method for amending our Constitution which they may pursue. For the moment, however, we are governed by the general rule that constitutional provisions are to be liberally construed as they stand. We may not, under the guise of judicial interpretation, accomplish a constitutional amendment by judicial fiat, nor are we inclined to do so." *Pritchard v. State, supra,* 248 Ind. at 576, 230 N.E.2d at 421.

Whatever its shortcomings, Article 1, Section 19, remains a constitutional rule of Indiana.

In utilizing the phrase "must convict," the trial court violated Article 1, Section 19. Neither *Taylor, Loftis,* nor *Pritchard* supports the majority's ultimate conclusion that "the jury was properly instructed and that there was no error in the giving of Instruction No. 10." *Majority Opinion, supra.*

For all the foregoing reasons, I dissent. Defendant's convictions should be reversed and the cause should be remanded to the trial court for a new trial.

I dissent.

PRENTICE, J., concurs.