Keith L. **BROWN**, Defendant-Appellant,

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–1083A331.**

Court of Appeals of Indiana, Third District.

June 12, 1984.

---

1. Of course, even IND.CODE § 7.1–5–10–1(a)(3) does not prohibit the *drinking* of alcoholic beverages during this time.

William E. Davis, East Chicago, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Ind., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Keith Brown and his alleged companion were charged with murder in the shooting death of an elderly man. They were tried by jury. Brown was convicted of involuntary manslaughter, a Class C felony. At the time of the offense Brown was a minor.[1]

Eleven days after the offense Brown was questioned by the police after he consulted with his step-father and sister. He then gave a statement which implicated Joel Williams in the shooting. As a result an information was filed against Williams.

A week later Brown was again questioned by the police. On this occasion the police neglected to secure the presence of Brown's family. Brown then gave a second statement in which he implicated himself in the crime. Prior to trial a motion to suppress the second statement was granted because of the state's failure to secure a proper waiver.[2]

During the trial the state introduced into evidence Brown's first statement. On cross examination the defense then questioned the officer concerning his use of that statement in filing the information against Joel Williams. He elicited that the officer had prepared a probable cause affidavit, that he had read the affidavit, that he was placed under oath, and that he swore the information contained therein was true and accurate to the best of his knowledge. The defense then introduced into evidence the probable cause affidavit which recited inter alia that the officer believed Brown to be truthful and credible.

Thereafter, the state was permitted to introduce into evidence Brown's second statement with an instruction limiting the jury's consideration of it to the question of impeachment. Brown, himself, did not testify.

The question presented is whether the doctrine of *Harris v. New York* (1971), 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 should be applied under these circumstances. *See also Barker v. State* (1982), Ind., 440 N.E.2d 664 applying *Harris* in Indiana.

Brown argues that *Harris* applies only to instances where an accused has elected to testify and tells a story materially different than that given in his theretofore suppressed statement. We find this reading of *Harris* unduly restrictive.

It must be recalled initially that the purpose of the exclusionary rule is not addressed to the trustworthiness of the evidence. Indeed the evidence is often of the most trustworthy kind. The rule has found its justification as a prophylaxis against impermissible police conduct. *See, e.g.*, Chief Justice Burger's dissent in *Bivens v. Six Unknown Fed. Narcotics Agents* (1971), 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619.

Thus, while the *Harris* Court specifically held that exclusion of an uncounseled statement given in violation of *Miranda*[3] could not be perverted into a license to commit perjury [401 U.S. at 227, 91 S.Ct. at 646], its analysis of the limitations upon a *Miranda*-induced bar went further.

"Some comments in the *Miranda* opinion can be read as indicating a bar to a use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the Court's hold-

---

1. Pursuant to IC 31-6-7-3 a minor's constitutional rights may be waived only by his counsel or his custodial parent, guardian, custodian or guardian ad litem.

2. At trial the judge stated on the record that the statement was suppressed not due to any coercion or intimidation but because of the failure of the police officer to call the family as required by law. Record at 172.

3. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

ing and cannot be regarded as controlling. *Miranda* barred the prosecution from making its case with the statements of an accused made while in custody prior to having or effectively waiving counsel. *It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes,* provided of course that the trustworthiness of the evidence satisfies legal standards." (our emphasis)

401 U.S. at 225, 91 S.Ct. at 645.

"The impeachment process here [through admission of the statement] undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. *Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief."* (our emphasis)

401 U.S. at 226, 91 S.Ct. at 646.

Here the state for its own purposes placed in evidence Brown's first statement. Brown then affirmatively attempted to bolster the credibility of that statement, which was self-exculpatory, by dwelling at length on the officer's probable cause affidavit against Williams, that it was made under oath and that Brown was a credible, truthful person. Of course, it was permissible for Brown to adopt this line of attack, and it certainly bore upon the police officer's credibility. The *Harris* factor arises from the circumstances that he attempted to do so while keeping the officer's hands tied with the suppression order so he could not fairly explain to the jury what transpired after Williams was charged.

Brown also asserts that his second statement lacked sufficient trustworthiness to

meet the *Harris* requirements. He premises this argument upon his assertion at the suppression hearing that the officer threatened him and slapped him in the ribs. The officer denied these actions, and the court clearly believed him. It is not our function to reweigh the evidence or redetermine the credibility of the witnesses. The court could have properly determined that the statement met the "legal standards of trustworthiness."

■ We conclude that the defendant opened the door by his cross examination of Officer Bradley and the introduction into evidence of the probable cause affidavit, and that pursuant to *Harris v. New York, supra,* and *Barker v. State, supra,* the state was entitled to then introduce Brown's second statement for impeachment purposes only. We further conclude that the limiting instruction given by the court to that effect upon the admission of the exhibit properly limited the consideration of the evidence.[4] *Barker, supra.*

■ Finally, Brown argues that it was error for the court to fail to admonish the jury when the prosecutor during final arguments asserted:

"A man has been murdered. Pure and simple. A man minding his own business, coming home from grocery shopping, was murdered by two thugs."

While we feel that under the evidence according to the prosecution's theory of the case, the characterization of the perpetrators of the offense as "thugs" may have been appropriate, we need not so decide. Since no specific objection or request for admonishment was made, the question has been waived.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

---

**4.** We need not separately address Brown's argument concerning the giving of this instruction, since the accuracy of the instruction is conceded and the argument made is that *Harris* is inapplicable.