

FILED
Dec 31 2015, 9:41 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Glen E. Koch II
BOREN, OLIVER & COFFEY, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nathan Polson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 31, 2015

Court of Appeals Case No.
55A01-1504-CR-135

Appeal from the Morgan Superior
Court

The Honorable Peter R. Foley,
Judge

Trial Court Cause No.
55D01-1409-F5-1458

**Mathias, Judge.**

Following a jury trial in Morgan Superior Court, Nathan Polson ("Polson") was convicted of Level 5 felony carrying a handgun without a license.[1] Polson was ordered to serve four years in the Department of Correction. On appeal, Polson argues that the trial court abused its discretion when it admitted a handgun into evidence because he claims the handgun was seized by police in violation of the Fourth Amendment of the United States Constitution.

We affirm.

## Facts and Procedural History

Late in the morning on September 24, 2014, a concerned citizen, T.B., placed a 911 call to report a suspicious person walking westward down Mahalasville Road in Morgan County towards Martinsville, Indiana. The caller identified a gentleman in a black t-shirt who appeared to be "under the influence of something" and was "holding something underneath his shirt with his arm down straight." Tr. pp. 206-08. T.B. described the man, who was later identified as Polson, as about six feet tall and between 175-185 pounds with a "real [sic] bad complexion" on his face. Tr. p. 207. T.B. was concerned because it was "unusual to see somebody walking down Mahalasville Road" as the area was mostly rural farmland with few houses, and especially because the man

---

[1] The jury found Polson guilty of Class A misdemeanor carrying a handgun without a license. Polson then stipulated to his prior felony conviction and the felony enhancement.

appeared to have a "pretty sizeable weapon tucked up underneath his shirt." Tr. p. 206.

[4]  Sergeant Brad Cooley ("Sergeant Cooley") of the Morgan County Sheriff's Department was dispatched to Mahalasville Road in response to the suspicious person report around 11:31 a.m. on September 24, 2014. He arrived at the scene at 11:40 a.m. and observed a man matching the description from the report in a black shirt and blue jeans walking along the rural road at the intersection of Low Gap and Mahalasville Roads. Sergeant Cooley parked his patrol car so he faced Polson but did not activate his emergency lights. As Polson approached, Sergeant Cooley asked Polson to walk toward him and Polson responded, "I haven't done anything wrong." Tr. p. 239. Sergeant Cooley explained to Polson that he had received a suspicious person report and that Polson matched the description. Polson told Cooley that he was walking to a gas station to catch a ride. The closest gas station was two-and-one-half miles away. Tr. p. 247.

[5]  At that point, Polson put his hands behind his back, was sweating, and acted "nervous and kind of skittish." Tr. p. 215. This behavior indicated to Sergeant Cooley that Polson was under the influence of "something." Tr. pp. 215-16. Polson was also in the middle of the road at the time, and because a car was approaching, Sergeant Cooley asked Polson to step behind his patrol car. Polson stepped to the right side of the trunk area of the car, and Sergeant Cooley stood on the other side of the car by the left rear wheel to keep a buffer between them. Tr. p. 217.

Sergeant Cooley then asked Polson to show him what he was concealing underneath his shirt. Polson turned away from Sergeant Cooley and lifted up only the left side of his shirt, which contained nothing. Sergeant Cooley responded that he wanted to see what was underneath the right side of his shirt. Polson again insisted that he had not done anything wrong but reluctantly raised the right side of his shirt showing the handle and top of a gun. Tr. p. 218. Sergeant Cooley responded by drawing his firearm and pointing it at Polson's midsection and advised Polson to keep his hands in the air.

Although Polson initially complied, he then put his hands down toward his sides and danced around nervously. Sergeant Cooley advised Polson to put his hands on the trunk of the patrol car. Again, Polson complied at first but then took his hands off the trunk and brushed the butt of the gun several times. Sergeant Cooley asked Polson once more to keep his hands on the trunk of the patrol car. Sergeant Cooley dispatched on his radio that he had a situation where an individual had a gun and requested backup. As Sergeant Cooley made this request, Polson reached down with his right hand, grabbed the butt of the gun, pulled it out [from under his shirt], and he threw it into the ditch. Tr. p. 219. Polson then said to Sergeant Cooley, "You'll never pin that on me, Bubba." *Id.*

Polson then began taking small steps around the left side of Sergeant Cooley's patrol car, and Sergeant Cooley feared that Polson might try to start a fight. Because Polson no longer possessed the gun, Sergeant Cooley switched to his

Taser and kept it pointed at Polson until the backup he requested arrived. Tr. p. 220.

[9] After the Martinsville policer officers reported to the scene, they secured Polson in handcuffs and retrieved the gun from the ditch. Deputy Brian Gabehart ("Deputy Gabehart") of the Morgan County Sheriff's Department arrived shortly after and "cleared" the gun by removing the six rounds of ammunition inside. Tr. p. 254. He then placed the gun and ammunition in evidence bags that Sergeant Cooley transported back to the police station. Officers later discovered that Polson had no permit to carry a firearm and that he had a prior felony conviction.

[10] On September 26, 2014, the State charged Polson with Level 5 felony carrying a handgun without a license. Polson filed a motion to suppress on January 23, 2015, on the basis that Sergeant Cooley obtained no search warrant and that the search and seizure violated the Fourth, Fifth, and Sixth Amendments of the United States Constitution and Article One, Sections Eleven and Fourteen of the Indiana Constitution.[2] The Court held a suppression hearing on January 27, 2015, and denied Polson's motion. A jury trial was held on February 10, 2015. Polson objected to the admission of the weapon at trial. The jury found Polson

[2] On appeal, Polson only asserted that the seizure of the handgun was unlawful under the Fourth Amendment.

guilty as charged, and the trial court ordered Polson to serve four years executed at the Department of Correction. Polson now appeals.

**Discussion and Decision**

[11] Polson argues that the trial court abused its discretion in admitting the seized handgun into evidence. Questions regarding the admission of evidence are left to the sound discretion of the trial court, and on appeal, we review the court's decision only for an abuse of that discretion. *Wells v. State*, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), *trans. denied.* The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id.*

[12] Our review of rulings on the admissibility of evidence is essentially the same regardless of whether the challenge is made through a pretrial motion to suppress or by an objection at trial. *Jackson v. State*, 890 N.E.2d 11, 15 (Ind. Ct. App. 2008). We will not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Id.* However, we also consider any undisputed evidence that is favorable to the defendant. *Id.* Additionally, we may consider foundational evidence introduced at trial in conjunction with any evidence from a suppression hearing that is not in direct conflict with the trial evidence. *Kelley v. State*, 825 N.E.2d 420, 427 (Ind. Ct. App. 2005).

[13] Polson asserts that Sergeant Cooley did not have reasonable suspicion to conduct an investigatory stop because Polson was walking down a public road

in a place he was allowed to be, only becoming nervous, skittish, and sweaty after speaking with Sergeant Cooley. Polson contends that the search and subsequent seizure violated the Fourth Amendment.

[14] The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. The Fourteenth Amendment extend[s] to state governments the Fourth Amendment's requirements for constitutionally valid searches and seizures. *Greeno v. State*, 861 N.E.2d 1232, 1234 (Ind. Ct. App. 2007) (citing *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997)). The State bears the burden of proving the evidence was admissible when a defendant challenges whether the evidence was properly gathered under the Constitution. *See Edwards v. State*, 759 N.E.2d 626, 630 (Ind. 2001). One exception to the Fourth Amendment allows a police officer to detain a person for investigative purposes. *Green v. State*, 719 N.E.2d 426, 428 (Ind. Ct. App. 1999). This is commonly called a "*Terry* stop."

[15] A *Terry* stop allows an officer to "stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable fact that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than an un-particularized suspicion or hunch, but less than the level of suspicion for probable cause. *State v. Campbell*, 905 N.E.2d 51, 54 (Ind. Ct. App. 2009) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). What constitutes reasonable suspicion is determined on a case-by-case basis, and the

totality of the circumstances is considered. *Bogetti v. State*, 723 N.E.2d 876, 878 (Ind. Ct. App. 2000) (citing *Baran v. State*, 639 N.E.2d 642, 644 (Ind. 1994); *Platt v. State*, 589 N.E.2d 222, 226 (Ind. 1992)).

[16] In judging the reasonableness of investigatory stops, courts must strike "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." *Carter v. State*, N.E.2d 464, 466 (Ind. Ct. App. 1997). Further, a set of individually innocent facts, when observed in conjunction, can be sufficient to create reasonable suspicion of criminal activity. *Finger v. State*, 799 N.E.2d 528, 534 (Ind. 2003).

[17] Courts across the country have recognized the importance of concerned citizen tips to law enforcement officers, and some jurisdictions have even found this information more reliable than that of a professional informant or anonymous tipster. *See Pawloski v. State*, 269 Ind. 350, 380 N.E.2d 1230, 1232 (1978). These individuals generally come forward with information out of the spirit of good citizenship and a desire to help law enforcement. *Id.* Prompt law enforcement response to this type of information is part and parcel of the community policing effort that is an essential function of law enforcement.

[18] Our supreme court has determined that a tip provided by a concerned citizen was sufficient to create reasonable suspicion where the caller provided additional information to police which the police [then] corroborated. *Kellems v. State*, 842 N.E.2d 352, 353 (Ind. 2006). *Terry* stops have a limited scope and

purpose, "not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence. . ." *Id.* at 355. "[S]ince reasonable suspicion is all that is necessary to support a *Terry* stop and it is a less demanding standard than probable cause. . . [t]he Fourth Amendment requires [only] some minimal level of objective justification for making the stop." *Id* (internal citations omitted).

[19] Sergeant Cooley testified at trial that he was notified on dispatch of a suspicious person walking along Mahalasville Road, reported by a concerned citizen, who provided his name and address to the 911 dispatcher. This was not an anonymous tip, but rather a neighbor who identified a potential threat in his community and believed Polson to be out of place. After responding to the report, Sergeant Cooley quickly identified Polson based on the caller's description of Polson's body type, bad complexion, clothing, and the large bulge underneath his shirt. Through his own personal observation, Sergeant Cooley corroborated the concerned citizen's observation that Polson was suspicious in several ways. In the first instance, Polson told Sergeant Cooley he was walking to a gas station to get a ride, but the closest gas station was at least two-and-one-half miles away.

[20] Then, when Sergeant Cooley approached Polson, he acted nervous and skittish, was sweating, and appeared to be under the influence of something. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *See Florida v. Rodriguez,* 469 U.S. 1, 6 (1984). While nervousness alone is not enough, nervousness can constitute reasonable suspicion supporting an

investigatory stop when combined with other factors. *Campos v. State*, 885 N.E.2d 590, 597-98 (Ind. 2008) (citing *Finger*, 799 N.E.2d at 534-35).

[21] Finally, as he became concerned for his safety, Sergeant Cooley asked Polson to show him what was underneath his shirt. In response to this lawful request, Polson acted in an evasive manner and refused to comply numerous times before finally revealing the handgun.

[22] Based on the totality of these circumstances, we conclude that Sergeant Cooley had reasonable suspicion to believe that criminal activity was afoot and that the investigatory search and seizure was permissible under the Fourth Amendment.

[23] We therefore conclude that the trial court did not abuse its discretion in admitting the seized handgun into evidence, and we affirm Polson's Level 5 felony carrying a handgun without a license conviction.

[24] Affirmed.


Baker, J., and Bailey, J., concur.