## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2016, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darrell A. Williams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 30, 2016

Court of Appeals Case No.
79A02-1604-CR-782

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

The Honorable Daniel J. Moore,
Magistrate

Trial Court Cause No.
79D01-1306-FC-26

**Crone, Judge.**

## Case Summary

Darrell A. Williams appeals his conviction for class C felony operating a motor vehicle after driving privileges were forfeited for life, following a bench trial. He contends that the trial court abused its discretion in admitting any evidence obtained as a result of the traffic stop of his vehicle because such stop was conducted in violation of his rights pursuant to the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Finding no federal or state constitutional violation, and therefore no abuse of discretion, we affirm.

## Facts and Procedural History

On May 29, 2013, at approximately 6:58 a.m., Tippecanoe County Sheriff's Office Lieutenant Greg Frantz and Deputy Aaron Gilman traveled separately to the residence of Alicia Hickman, a woman whom they believed Williams was in a relationship and living with. Lieutenant Frantz had received a tip from the local prosecutor's office that Williams may be operating a vehicle with an "HTV [habitual traffic violator] life status." Tr. at 6. After personally confirming Williams's HTV status in the Indiana Bureau of Motor Vehicles database, Lieutenant Frantz, who was already somewhat familiar with Williams's appearance, "refreshed [his] memory" that morning by looking at Williams's most recent photograph in law enforcement records. *Id*. at 7.

[3] Lieutenant Frantz and Deputy Gilman positioned themselves near Hickman's residence to conduct surveillance. Deputy Gilman noted that two vehicles were parked in the driveway of the residence. After running the plates on those vehicles, Deputy Gilman found that both vehicles were registered to Hickman. Both officers were then called away to investigate unrelated reports.

[4] Upon returning to the residence at approximately 7:30 a.m., Deputy Gilman discovered that one of the two vehicles was no longer parked in Hickman's driveway. Deputy Gilman parked in a nearby alley so that he could watch and see if the vehicle returned or if the remaining vehicle left the residence. Shortly thereafter, Deputy Gilman observed the second vehicle, a silver 2007 Hyundai Santa Fe, exiting the driveway. Deputy Gilman could not see the driver. Deputy Gilman radioed to Lieutenant Frantz, who was positioned at the entrance to the neighborhood, that the vehicle was headed his way.

[5] As the vehicle approached Lieutenant Frantz, he used binoculars to look through the front windshield of the vehicle and determined that the driver was a black male, but the officer "could not see if it was [Williams]." *Id.* at 96. However, when the vehicle "made the turn to go northbound on Concord Road, still using the assistance of the binoculars, [Lieutenant Frantz] was able to see through the front window [that] it appeared to be [Williams]," although Lieutenant Frantz was not "a hundred percent sure at this point." *Id.* After the vehicle passed Lieutenant Frantz, the officer began following the vehicle. Lieutenant Frantz was able to "clearly see" through the vehicle's rear window into the rearview mirror, and could see the driver's forehead, eyes, and nose.

*Id*. at 96-97, 116-17. Lieutenant Frantz determined that "it was indeed" Williams. *Id*. at 96, 97. Lieutenant Frantz activated his police lights and initiated a traffic stop of the vehicle. Thereafter, Lieutenant Frantz confirmed Williams's identity and placed him under arrest.

[6] The State charged Williams with class C felony operating a motor vehicle after driving privileges were forfeited for life. Williams filed a motion to suppress alleging that the traffic stop of his vehicle was unconstitutional pursuant to the federal and state constitutions, and therefore all evidence obtained should be suppressed. The trial court denied the motion and held a bench trial on February 19, 2016. Williams renewed his objection to the admission of evidence during trial. At the conclusion of the trial, the trial court found Williams guilty as charged. This appeal ensued.

## Discussion and Decision

[7] Williams asserts that the trial court abused its discretion in admitting any evidence that he was operating a vehicle after his driving privileges were forfeited for life because the traffic stop which revealed that evidence was unconstitutional. Our review of rulings on the "admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection." *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005). "We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling." *Id*. We must also consider the uncontested evidence favorable to the defendant. *Id*. We will not disturb

the trial court's evidentiary ruling unless it is shown that the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). However, the constitutionality of a search and seizure is a question of law that we review de novo. *Lewis v. State*, 949 N.E.2d 1243, 1246 (Ind. 2011).

## Section 1 – The traffic stop did not violate the Fourth Amendment.

William's first contends that the traffic stop of his vehicle violated his rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment states,

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The fundamental purpose of the Fourth Amendment 'is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings.'" *Hines v. State,* 981 N.E.2d 150, 153 (Ind. Ct. App. 2013) (quoting *Trotter v. State,* 933 N.E.2d 572, 579 (Ind. Ct. App. 2010)). This protection has been extended to the states through the Fourteenth Amendment. *Krise v. State,* 746 N.E.2d 957, 961 (Ind. 2001).

In general, the Fourth Amendment prohibits a warrantless search and seizure absent a valid exception to the warrant requirement. *Peak v. State,* 26 N.E.3d

1010, 1014 (Ind. Ct. App. 2015). One exception to the warrant requirement is a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). Specifically, it is well settled that

> an officer may conduct a brief investigatory stop of an individual when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. The investigatory stop, also known as a *Terry* stop, is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. Reasonable suspicion is determined on a case by case basis. The reasonable suspicion requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur.

*J.B. v. State,* 30 N.E.3d 51, 55 (Ind. Ct. App. 2015) (citations and quotation marks omitted). "Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than an un-particularized suspicion or hunch, but less than the level of suspicion required for probable cause." *Polson v. State*, 49 N.E.3d 186, 189-90 (Ind. Ct. App. 2015), *trans. denied* (2016).

[10] Based on our review of the totality of the circumstances here, we conclude that Lieutenant Frantz's investigatory stop was supported by reasonable suspicion. Lieutenant Frantz and Deputy Gilman were investigating a report from the local prosecutor's office that Williams may be operating a vehicle despite his

HTV status.[1]  Accordingly, after personally confirming Williams's status as an HTV, the officers began conducting surveillance of the residence where they had reason to believe Williams was staying.  Upon determining that one vehicle had already left the residence and that the second vehicle was in the process of leaving the residence, the officers began their attempts to identify the second driver.  Lieutenant Frantz stated that he had familiarized himself with Williams's appearance that morning, and that when he first observed the vehicle coming toward him, he was able to determine only that the driver was a black male but he "could not see if it was [Williams.]"  Tr. at 96.  However, Lieutenant Frantz also testified that as the vehicle got closer and turned, "still using the assistance of the binoculars [he] was able to see through the front window" that the driver did "appear[] to be [Williams]."  *Id.*  When Lieutenant Frantz began following the vehicle, the officer was able to "clearly see" through the rear window of the vehicle into the vehicle's rearview mirror.  *Id.* at 97.  Lieutenant Frantz explained how he could "easily see" the driver in the rearview mirror, and that after seeing a significant portion of the driver's face in the mirror, including his forehead, eyes, and nose, Lieutenant Frantz determined that the driver "was indeed" Williams.  *Id.* at 96, 102.

---

[1] In his reply brief, Williams focuses much of his argument on likening the tip from the prosecutor's office to an "anonymous tip."  Reply Br. at 4-6.  This argument is misplaced.  As we discuss more fully below, regardless of how the tip is characterized, the State did not rely on the tip as the basis for reasonable suspicion.  Lieutenant Frantz's stop of the vehicle was based upon his visual identification of Williams as the driver of the vehicle and his independent confirmation of Williams's HTV status.

Although Williams implies that the facts available to Lieutenant Frantz at the moment of the stop were insufficient to positively "confirm" that he was the driver of the vehicle, we remind Williams that reasonable suspicion does not require such certitude. Appellant's Br. at 9. Moreover, our review of the record reveals that Lieutenant Frantz did exactly what a law enforcement officer should have done under the circumstances. Rather than acting hastily and stopping the surveilled vehicle immediately, Lieutenant Frantz continued to observe the driver until he was able to make a reasonable visual identification of the driver as Williams. Under the totality of the circumstances, Lieutenant Frantz had reasonable suspicion of criminal activity based on articulable facts to support the traffic stop of Williams's vehicle. Therefore, the stop did not violate the Fourth Amendment and the trial court did not abuse its discretion in admitting evidence obtained as a result.

## Section 2 – The traffic stop did not violate the Indiana Constitution.

Williams also contends that the traffic stop violated his rights under Article 1, Section 11 of the Indiana Constitution. While the language of Article 1, Section 11 is virtually identical to its Fourth Amendment counterpart, our supreme court has "made an explicit point to interpret and apply Section 11 independently from federal Fourth Amendment jurisprudence." *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). "Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer," concluding that a search or seizure is legitimate where it is reasonable given the

totality of the circumstances. *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006). In assessing reasonableness, we consider (1) the degree of concern, suspicion or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[13] In this case, there was a high degree of suspicion that a violation had occurred or was occurring. Lieutenant Frantz personally confirmed that Williams's driver's license had been suspended for life. After conducting surveillance of the residence where officers believed Williams was staying and observing a vehicle leave the residence, Lieutenant Frantz was able to determine through visual identification that the male driver of the vehicle was indeed Williams. This factor weighs in favor of finding that Lieutenant Frantz's decision to conduct a *Terry* stop of the vehicle was reasonable.

[14] Second, the degree of intrusion here was minimal. After visually identifying the driver of the vehicle as Williams, Lieutenant Frantz initiated a brief traffic stop of the vehicle to confirm or dispel his belief that Williams was the driver. Our supreme court has acknowledged that generally the degree of intrusion of a *Terry* stop is relatively minor. *See Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). Also, the extent of law enforcement needs was high. Operating a vehicle after driving privileges have been suspended for life is a serious felony offense.

[15]     In sum, for essentially the same reasons explained in the context of the Fourth Amendment, we hold that Lieutenant Frantz's stop of Williams's vehicle was reasonable given the totality of the circumstances and therefore did not violate the Indiana Constitution.  Accordingly, the trial court did not abuse its discretion in admitting evidence obtained as a result of the stop.

[16]     Affirmed.

Kirsch, J., and May, J., concur.