## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 08 2017, 7:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hall, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marlon Jackson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 8, 2017

Court of Appeals Case No.
49A04-1701-CR-89

Appeal from the Marion Superior Court

The Honorable Jose D. Salinas, Judge

The Honorable John M. Christ, Commissioner

Trial Court Cause No.
49G14-1603-F6-10184

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Marlon Jackson (Jackson), appeals the trial court's denial of his motion to suppress certain evidence.

We affirm.

# ISSUES

Jackson presents us with two issues in this interlocutory appeal, which we restate as:

(1) Whether the trial court erred by denying his motion to suppress evidence obtained in violation of his Fourth Amendment Rights under the United States Constitution; and

(2) Whether the trial court erred by denying his motion to suppress evidence obtained in violation of Article 1, Section 11 of the Indiana Constitution.

# FACTS AND PROCEDURAL HISTORY

On July 25, 2016, Jackson filed a motion to suppress, which the trial court set for an evidentiary hearing on August 4, 2016. Prior to the hearing, the State dismissed Jackson's charge of possessing a narcotic drug, a Level 6 felony, because Jackson presented a valid prescription. At the hearing, the parties informed the trial court that Jackson had very recently discovered legal authority which, according to Jackson, would prevent the State from proceeding with Jackson's remaining charge of possession of marijuana, a Class B misdemeanor. Although Jackson had provided this case law to the State

immediately prior to the hearing, the State requested time to review the case and to decide whether to proceed. The trial court continued the suppression hearing to September 1, 2016.

[5] A set of pretrial conferences was conducted respectively on September 1, 2016, and September 15, 2016. During the latter pretrial conference, the parties stipulated to the facts contained in the affidavit of probable cause filed by the arresting officer, which read as follows:

> On 3/13/2016 at approx. 1008 [sic] pm I, Officer Bryan M. Zotz [Officer Zotz] with the IMPD, was sitting northbound on Drexel Ave at 36th St. I observed a gray Cadillac driving backwards, westbound on 36th St. I observed the vehicle stop at the stop sign at 36th St., and then continue westbound on 36th St., driving backwards. I activated my emergency lights and stopped that vehicle westbound on 36th St. at Linwood Ave.
>
> I approached the vehicle on the passenger side and observed the driver, later identified as [Jackson], b/m, d.o.b. . . . take off his ball cap and place it over the items in the floorboard tray in front of the center console. Jackson was leaning hard to his right, and kept repositioning the hat to cover the center tray. I asked Jackson why he was driving down the street backwards. Jackson stated that his car would not drive forward, and that he was headed home to Rural Ave. I asked Jackson for his driver's license. Jackson started to look around his person and about the vehicle. Jackson opened up the center console, and I was able to observe a digital scale inside. Due to my training and experience as a police officer, I know a digital scale to be commonly used to weigh illegal narcotics.
>
> Jackson verbally gave me his identifiers, and I moved to the rear of the vehicle to have IMPD Control run the IN temporary

license plate of G242370. As I did so, I observed Jackson and his front seat passenger start reaching around the floor board tray area. I then ran both individuals through IMPD Communications and requested backup.

After Officer Chad Gibbson, A366, had arrived on the scene, I had Jackson step from the vehicle. When Jackson stepped from the vehicle, I would smell the odor of raw marijuana coming off of his person. I moved Jackson to the rear of the vehicle, performed a pat down of his outer clothing, and had him sit on the ground. I then performed a search of the driver's compartment of the vehicle. I recovered the digital scale from the center console. I also observed small amounts of marijuana shake and seeds on the floorboard of the vehicle.

I then went back to Jackson to perform a search of his person. I asked Jackson if he had any marijuana on his person. He stated he did, and that it was in his pocket I then searched Jackson, and found inside his right front pant pocket, a clear bag containing a green leafy substance that, due to my training and experience as a police officer, I believed to be marijuana. [Jackson] was arrested for [p]ossession of marijuana, . . . ., and [p]ossession of [p]araphernalia, . . .

Jackson was transported to the APC by MCSO. Deputy Patterson 30679, advised me that when Jackson was received in the APC, Deputy Ladd, 31153, located a white pill suspected to be hydrocodone inside the right front undershorts pocket of Jackson. Deputy Patterson then collected and transported the white pill back to me. I then transported the pill, suspected marijuana, and digital scale to the IMPD property room, placed the items in a heat seal envelope, and into the narcotics box. Jackson was also arrested for [p]ossession of a [c]ontrolled [s]ubstance, . . . Vehicle was transported by Auto Return.

All events occurred in Marion Co., State of IN.

The suspected substance(s) were tested in the IMPD Property room. The results were as follows: Marijuana 8.49 grams.

(Appellant's App. Vol. II, pp. 11-12).

On October 6, 2016, the State submitted a memorandum in opposition to Jackson's motion to suppress. Jackson's memorandum in response was submitted on October 21, 2016. During a hearing on November 3, 2016, the trial court denied Jackson's motion to suppress. The trial court granted Jackson leave to file an interlocutory appeal, which we accepted on February 3, 2017.

Jackson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Jackson contends that the trial court erred by denying his motion to suppress as certain evidence was obtained in violation of his Fourth Amendment Rights under the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

We review the denial of a motion to suppress in a manner similar to reviewing the sufficiency of the evidence. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). We consider only the evidence favorable to the trial court's ruling, alongside substantial uncontradicted evidence to the contrary, to decide if that evidence is sufficient to support the denial. *Id.* We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's

determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008).

## I. *Fourth Amendment*

[10] The Fourth Amendment to the United States Constitution protects the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. "The fundamental purpose of the Fourth Amendment 'is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings.'" *Mullen v. State*, 55 N.E.3d 822, 827 (Ind. Ct. App. 2016) (quoting *Trotter v. State*, 933 N.E.2d 572, 579 (Ind. Ct. App. 2010)). This protection has been extended to the states through the Fourteenth Amendment to the United States Constitution. *Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001). In general, the Fourth Amendment prohibits searches and seizures conducted without a warrant that is supported by probable cause. *Mullen*, 55 N.E.3d at 827. As a deterrent mechanism, evidence obtained without a warrant is not admissible in a prosecution unless the search or seizure falls into one of the well-delineated exceptions to the warrant requirements. *Id*. "Where a search or seizure is conducted without a warrant, the State bears the burden to prove that an exception to the warrant requirement existed at the time of the search or seizure." *Brooks v. State*, 934 N.E.2d 1234, 1240 (Ind. Ct. App. 2010), *trans. denied*.

[11] One such exception was created in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), pursuant to which an officer is permitted to "stop and

briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than an un-particularized suspicion or hunch, but less than the level of suspicion for probable cause. *Polson v. State*, 49 N.E.3d 186, 189-90 (Ind. Ct. App. 2015), *trans. denied*. What constitutes reasonable suspicion is determined on a case-by-case basis, and the totality of the circumstances is considered. *Id*. at 190. As a result, the reasonable suspicion requirement is satisfied where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Lyons v. State*, 735 N.E.2d 1179, 1183-84 (Ind. Ct. App. 2000), *trans. denied*. In judging the reasonableness of investigatory stops, courts must strike "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." *Polson*, 49 N.E.3d at 190. Indeed, "there is no 'bright line' for evaluating whether an investigative detention is unreasonable, and 'common sense and ordinary human experience must govern over right criteria.'" *Reinhart v. State*, 930 N.E.2d 42, 46 (quoting *United States v. Sharp*, 470 U.S. 675, 685 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)).

[12] Jackson now contends that Officer Zotz lacked reasonable suspicion to stop him when the officer observed Jackson "driving backwards at around 10:00

p.m., stop[ing] at a stop sign, and continu[ing] to drive backwards."
(Appellant's Br. p. 15). Analogizing to *Ransom v. State*, 741 N.E.2d 419 (Ind.
Ct. App. 2000), *trans. denied*, Jackson asserts that Officer Zotz did not have an
objectively justifiable reason for stopping him. In *Ransom*, Ransom was driving
his vehicle on a narrow Indianapolis street when he encountered an
approaching police vehicle. *Id*. at 420. Because of the narrowness of the road
and the presence of parked vehicles on both sides by the road, the two vehicles
could not both fit in the traveled portion of the road. *Id*. As the police officer
put his vehicle to the side of the road, Ransom put his vehicle in reverse and
backed around the corner. *Id*. The officer stopped Ransom's vehicle for
"operating his vehicle in reverse." *Id*. A subsequent search of the vehicle
revealed a handgun. *Id*. at 421. After the trial court denied Ransom's motion
to suppress, we accepted his interlocutory appeal. On appeal, we reversed the
trial court, noting that as driving in reverse is an activity, that in and of itself, is
not unlawful, and as Ransom did not commit any traffic violation, the officer
lacked reasonable suspicion that justified the stop. *Id*. at 422.

[13]  Although we recognize that our legislature does not prohibit driving in reverse,
nor does it mandate driving forward as a custom, unlike in *Ransom*, the instant
"set of individually innocent facts, when observed in conjunction, [is] sufficient
to create reasonable suspicion of criminal activity." *Polson*, 49 N.E.3d at 190.
At approximately 10:00 p.m., Officer Zotz was sitting northbound on Drexel
Ave at 36th St., where he observed a gray Cadillac driving backwards,
westbound on 36th St. The vehicle came to a stop at the stop sign at 36th St.,

and then continued westbound on 36th St., driving backwards. Distinguished from the obstacles and narrow street in *Ransom*, Jackson drove backwards unrestrained and over a considerable distance. "Common sense and ordinary human experience" would qualify this as a most unusual and suspicious situation. *Reinhart*, 930 N.E.2d at 46. Therefore, these facts, together with the reasonable inferences arising from such facts, would cause an ordinary prudent person to believe criminal activity may be afoot. We conclude that Officer Zotz was justified in stopping Jackson for investigatory purposes.[1]

## II. *Article I, Section 11*

[14] Jackson also argues that the trial court erred in denying his motion to suppress under Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11 of the Indiana Constitution is identical to the Fourth Amendment, but is analyzed differently. *Croom v. State*, 996 N.E.2d 436, 442 (Ind. Ct. App. 2013), *reh'g denied, trans. denied*. The Indiana Constitutional analysis focuses on the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). We determine

---

[1] We acknowledge that the State also asserted Officer Zotz' *Terry* stop was justified based on several traffic infractions about the required illumination for vehicles. It argued that Jackson's vehicle violated the headlamp statute by not having headlamps illuminating the area ahead of his vehicle because he was driving in reverse. *See* I.C. §§ 9-19-6-6; -17(b); -24(b). Second, the State claimed that Jackson violated the tail lamp and stop lamp statutes by not having tail lamps emitting red light visible from the rear of the vehicle and by not having stop lamps emitting red to amber light visible from the rear of the vehicle because he was driving in reverse. *See* I.C. §§ 9-19-6-6; -17(b); -24(b). Third, the State claimed that because Jackson was driving backward, it is likely his tail lamps were illuminated, displaying a red light in the direction of his travel. *See* I.C §§ 9-19-6-6; -17(b); -24(b). Nevertheless, the stipulated facts are silent as to the vehicle's lamp location, number, color, operation, or other modifications or additions. Accordingly, the State's arguments amount to nothing more than mere speculation.

reasonableness under the Indiana Constitution by balancing "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of search or seizure impose on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id*. at 361. The State carries the burden of proving that the search was reasonable under the totality of the circumstances. *Croom*, 996 N.E.2d at 442.

[15] A brief investigatory stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. *Id. See also State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011). Such suspicion "exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity is or is about to occur." *Id*.

[16] Office Zotz' stop was reasonable under the Indiana Constitution. Driving a car backwards for an extended distance in the late evening created a reasonable degree of concern that something criminal was occurring. Officer Zotz' brief stop of Jackson's vehicle to investigate why Jackson was driving backwards imposed a minimal degree of intrusion. Thirdly, the need of law enforcement to stop and conduct an investigation was reasonable. The only way to determine the reason for Jackson's driving style and to dispel Officer Zotz' concern was to ask Jackson directly. Although the evidence is silent as to any other vehicles on the road at that time of the evening, Jackson's driving backwards created a safety hazard for the public. Balancing the reasonable degree of concern, the minimal intrusion, and the need of law enforcement, we

conclude that Officer Zotz had reasonable suspicion under Article 1, Section 11 of the Indiana Constitution. Therefore, we affirm the trial court's denial of Jackson's motion to suppress.

# CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Jackson's motion to suppress.

Affirmed.

Najam, J. and Bradford, J. concur