## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2019, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ross J. Thrasher,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 15, 2019

Court of Appeals Case No.
18A-CR-2766

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No.
49G21-1707-F2-24642

**Friedlander, Senior Judge.**

[1] Ross J. Thrasher appeals his conviction of unlawful possession of a firearm by a serious violent felon, a Level 4 felony.[1] He claims the trial court erred while instructing the jury and further erred in the admission of evidence. We affirm.

[2] On the night of June 30, 2017, FBI Special Agents Steven Secor and Len Rothermich were on patrol in Indianapolis. They were working with Indianapolis Metropolitan Police Department (IMPD) officers under a program that targeted neighborhoods with high rates of violent crime. The agents drove an unmarked car. They were in plain clothes, but they both wore tactical vests with the acronym "FBI" in bright yellow letters on the front and back. In addition, the agents affixed their badges to their vests.

[3] At 9:45 p.m., the agents were dispatched to an auto repair business to investigate a report of a suspicious gray vehicle. The owner of the business remotely monitored his property via cameras, and he had called the police after seeing an unfamiliar car parked in his lot. Agents Secor and Rothermich arrived at the business, along with several IMPD officers. Several vehicles, including a gray Hyundai, were parked in the lot. No one was present.

[4] The agents determined the building showed no signs of a break-in. Next, Agent Secor inspected the vehicles. The gray Hyundai stood out from the other vehicles because it was newer and in better shape. He touched the Hyundai's hood and discovered that it was very warm, "as if it had just been parked." Tr.

---

[1] Ind. Code 35-47-4-5(c) (2016).

Vol. II, p. 141.  Agent Secor looked in the bed of a nearby pickup truck.  The bed had walls made of horizontal wooden slats.  Agent Secor saw a few pieces of debris in the bed but nothing else of note.

[5]  The IMPD officers left, and the agents returned to their car.  As the agents prepared to drive away, they saw two men walking toward the parking lot.  The men walked past the agents' car and approached the Hyundai.  The agents parked their car, got out, and identified themselves as FBI agents.  They asked the new arrivals to walk to their location and talk with them.

[6]  The two men, one of whom was Thrasher, walked over and identified themselves.  Thrasher indicated that he and his companion had been visiting a friend down the street.  He further stated that the Hyundai was his vehicle.  Thrasher and his companion displayed "obvious anxiety" and "nervousness."  *Id.* at 187.  Agent Secor asked Thrasher if he was carrying any weapons, and Thrasher said "no."  *Id.* at 148.  Agent Secor next asked Thrasher if he would consent to a pat down, and Thrasher agreed.

[7]  As the agent patted down Thrasher, he felt a hard object sticking out of Thrasher's pants pocket.  Agent Secor asked Thrasher to identify the object, and Thrasher said it was a "starter pistol."  *Id.* at 149.  The agent took the object out of Thrasher's pocket.  Subsequent testing revealed that it was a starter pistol as Thrasher claimed, but at the time of the encounter it looked like a genuine pistol to both agents.  Agent Secor later testified that he would have had no way

to tell whether it was a real pistol or a starter pistol "without test firing it." *Id.* at 151.

[8] Agent Secor asked Thrasher, "why didn't you tell me about that?" *Id.* at 152. Thrasher failed to provide a "clear answer." *Id.* at 189. Next, the agent ordered Thrasher and his companion to turn around and put their hands on the back of the nearby pickup truck. Agent Secor intended to do a more thorough pat down "because I felt that Mr. Thrasher was not being completely truthful with me." *Id.* at 152.

[9] Thrasher's companion immediately complied with Agent Secor's instructions. By contrast, Thrasher, who became even more anxious, walked over to the truck, but he chose not to put his hands on it. Instead, he kept raising his hands and dropping them to his waist. The agent repeatedly ordered Thrasher to put his hands on the truck, but Thrasher did not comply.

[10] Next, Thrasher moved around to the passenger side of the truck, away from both agents but still in sight. Agent Secor ordered him to stop and show his hands, but Thrasher did not comply. Instead, Thrasher turned his back to the agents, bent over slightly, and "began to fumble with something in his waistband area." *Id.* at 154. He then raised and lowered his hands three or four times toward the pickup truck, touching the wooden slats.

[11] Agent Secor drew his pistol and continued to order Thrasher to return to the back of the truck. Agent Rothermich approached Thrasher with his pistol drawn and grabbed him by the back of his shirt. The agent looked over

Thrasher's shoulder and saw that Thrasher was holding another pistol under his shirt. Agent Rothermich took the pistol from Thrasher and threw it on the ground.

[12] Agent Secor saw Agent Rothermich grab something from Thrasher's hands, and then Agent Rothermich said "something about a gun." *Id.* at 156. Agent Secor called for backup as Thrasher continued to move his hands from his waist toward the slats on the truck bed. Agent Rothermich holstered his pistol and eventually handcuffed Thrasher. Other officers arrived and placed Thrasher's companion in custody. Next, the officers took control of Thrasher and walked him to a curb, where they ordered him to sit down. Agent Secor heard Thrasher tell the officers "the gun was his girlfriend's." *Id.* at 157. Thrasher further stated he took the gun with him "because it was a bad neighborhood and he was worried . . . about the car getting broken into [sic]." *Id.*

[13] Meanwhile, Agent Secor searched the area where Thrasher had been standing. He found the pistol that Agent Rothermich had thrown on the ground. Officers later determined it was a genuine semiautomatic pistol. Next, Agent Secor looked in the truck's bed, and he found a baggie containing a white crystalline substance.

[14] The agents approached Thrasher. He said, "I'm sorry, I screwed up. Is there anything I can do to fix this?" *Id.* at 196. Thrasher offered to work for the agents and said he could "go buy right now." *Id.* at 161.

[15]     On July 5, 2017, the State charged Thrasher with dealing in methamphetamine, a Level 2 felony; possession of methamphetamine, a Level 3 felony; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; and resisting law enforcement, a Class A misdemeanor. The State later alleged Thrasher was subject to a sentencing enhancement because he was a habitual offender.

[16]     On March 26, 2018, Thrasher filed a motion to suppress evidence, followed by a memorandum of law. The State filed a brief in opposition to Thrasher's motion, and Thrasher filed a reply brief in support of his motion. The trial court denied the motion after a hearing.

[17]     On September 11, 2018, Thrasher filed a motion to bifurcate, directed at the charge of unlawful possession of a firearm by a serious violent felon. He asked the court to hold separate trials to determine: (1) whether he possessed a handgun; and, if so, (2) whether he was a serious violent felon. The court granted the motion, determining that he would be first tried on the charge of "Unlawful Possession of a Firearm," Appellant's App. Vol. II, p. 170, along with the methamphetamine-related offenses. Then, if necessary, the jury would be asked to determine whether the State had proved beyond a reasonable doubt that Thrasher was a serious violent felon when he possessed the firearm.

[18]     Immediately before trial, the trial court dismissed the charge of resisting law enforcement upon the State's request. A jury determined Thrasher was not guilty of the methamphetamine-related offenses but was guilty of unlawful possession of a firearm. In a second phase of the proceedings, Thrasher waived

his right to a jury trial. The trial court heard evidence and determined Thrasher was guilty of unlawful possession of a firearm by a serious violent felon. Next, the State dismissed the habitual offender enhancement. The court imposed a sentence, and this appeal followed.

# 1. Final Instruction No. 4

[19] Thrasher argues the trial court erred while instructing the jury on the issue of whether he unlawfully possessed a handgun. The State responds that the instruction was not erroneous, or in the alternative, did not give rise to reversible error.[2]

[20] Instructing the jury lies within the sole discretion of the trial court. *Carter v. State*, 766 N.E.2d 377 (Ind. 2002). Considering the instructions as a whole and in reference to each other, we will not reverse for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law governing the case. *Id.*

[21] Thrasher challenges Final Instruction 4, claiming that the instruction mandated the jury to reach a specific verdict upon finding certain facts, in violation of

---

[2] Thrasher did not object to the trial court's final jury instructions during the instructions conference. Instead, he objected to Final Instruction 4 after the court read the instructions to the jury but before the jury retired to deliberate. The State concedes that pursuant to Indiana Trial Rule 51(C) (made applicable to criminal cases by Indiana Rule of Criminal Procedure 8(H)), an objection to a jury instruction is timely if made "before the jury retires to consider its verdict." We conclude Thrasher's objection was timely and he preserved his claim for appellate review.

article 1, section 19 of the Indiana Constitution.[3] Section 19 grants to juries "the right to determine the law and the facts." *Id.* "A mandatory instruction that binds the minds and consciences of the jury to return a verdict of guilty upon finding certain facts invades the province of the jury under [Section 19]." *Higgins v. State*, 783 N.E.2d 1180, 1186 (Ind. Ct. App. 2003), *trans. denied*.

[22] In *Pritchard v. State*, 248 Ind. 566, 230 N.E.2d 416 (1967), Pritchard appealed her conviction of manslaughter. She claimed the trial court erroneously instructed the jurors that if they found certain facts, they "shall find such defendant guilty of involuntary manslaughter." *Id.* at 568, 230 N.E.2d at 417. The Indiana Supreme Court, discussing Section 19 and its application in prior cases, concluded: "Under our Constitution, a judge who gives the jury a binding, specific and mandatory instruction on the facts and law in a criminal case commits error thereby just as surely as the judge who instructs a jury that they may 'disregard the law' as laid down by the court." *Id.* at 575, 230 N.E.2d at 421. The Court further determined the error was not cured by a different instruction telling the jury they had the right to determine the facts and the law. The Court reversed Pritchard's conviction and remanded for a new trial.

[23] The Indiana Supreme Court reached a different conclusion in *Barker v. State*, 440 N.E.2d 664 (Ind. 1982). Barker appealed his convictions of burglary and theft, claiming the trial court had erred by instructing the jury that it "must"

---

[3] Thrasher does not raise a claim under the Due Process Clause of the United States Constitution.

find him guilty if the State had "proven beyond a reasonable doubt the material allegations of either of the charges." *Id.* at 670. The Indiana Supreme Court distinguished the instruction in Barker's case from the instruction in Pritchard's case, noting that in *Pritchard* the trial court "improperly mandated the jurors to return a verdict of guilty if they determined certain specifically mentioned facts." *Id.* at 671. By contrast, in Barker's case, the instruction was "more general and abstract" because it referred to a "material allegation of the charge" rather than to a specific factual allegation. *Id.*

[24] In any event, the *Barker* court further determined any defect in the instruction was ameliorated by other instructions that set forth the elements of the offense and informed the jurors that they were the sole judges of the law and the evidence and "must presume the defendant is innocent." *Id.* at 672. The trial court further instructed the jurors that they "must continue to believe [Barker] is innocent throughout the trial, unless the State proves that [he] is guilty, beyond a reasonable doubt, of every essential element of the offense charged." *Id.*

[25] In Thrasher's case, Final Instruction 4 provides:

> COUNT III
>
> The Defendant is charged in Count III with the offense of Unlawful Possession of a Firearm, which is defined by statute as follows:
>
> A person who knowingly or intentionally possesses a firearm and said possession was unlawful, commits the offense of Unlawful Possession of a Firearm.

In this stage of the trial, to convict the Defendant of Count III, the State must have proven each of the following beyond a reasonable doubt:

1. The Defendant, Ross Thrasher,

2. Knowingly or Intentionally

3. Possessed

4. A firearm.

If the State fails to prove each of these elements beyond a reasonable doubt, you must find the Defendant, Ross Thrasher, not guilty of Possession of a Firearm.

If you find that the State has proven each of these elements beyond a reasonable doubt, you must find the Defendant, Ross Thrasher, guilty of Possession of a Firearm, and there will be a second stage of the trial. In the second stage, you will determine whether that possession was lawful or unlawful.

Appellant's App. Vol. II, p. 184.

[26] Under circumstances of Thrasher's case we conclude, as the Indiana Supreme Court did in *Barker*, that the use of the word "must" in Final Instruction does not establish reversible error. The instruction required the jury to issue a judgment of guilty upon determining specific facts, but it also required the jury to issue a judgment of not guilty if the State failed to prove certain facts.

[27] In addition, Preliminary Instruction 2 provided,[4] "Under the Constitution of Indiana, you have the right to determine both the law and the facts. The

---

[4] In Final Instruction 1, the trial court told the jury to continue to consider the preliminary instructions during deliberations.

Court's instructions are your best source in determining the law." *Id.* at 166. The court further informed the jury in Preliminary Instruction 3 to "consider all the instructions together. Do not single out any certain sentence or any individual point or instruction and ignore the others." *Id.* at 167. Preliminary Instruction 9 provided:

> Under the laws of this State, a person charged with a crime is presumed to be innocent. This presumption of innocence continues in favor of the Defendant throughout each stage of the trial and you should fit the evidence presented to the presumption that the Defendant is innocent, if you can reasonably do so.
>
> If the evidence lends itself to two reasonable interpretations, you must choose the interpretation consistent with the defendant's innocence. If there is only one reasonable interpretation, you must accept that interpretation and consider the evidence with all the other evidence in the case in making your decision.
>
> To overcome the presumption of innocence, the State must prove the Defendant guilty of each element of the crime charged, beyond a reasonable doubt.
>
> The Defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

*Id.* at 173.

[28] Next, Preliminary Instruction 10 informed the jury, in relevant part:

The burden is upon the State to prove beyond a reasonable doubt that the Defendant is guilty of the crime(s) charged. It is a strict and heavy burden. The evidence must overcome any reasonable doubt concerning the Defendant's guilt. But it does not mean that a Defendant's guilt must be proved beyond all possible doubt.

A reasonable doubt is a fair, actual and logical doubt based upon reason and common sense. A reasonable doubt may arise either from the evidence or from a lack of evidence. Reasonable doubt exists when you are not firmly convinced of the Defendant's guilt, after you have weighed and considered all the evidence.

A defendant must not be convicted on suspicion or speculation. It is not enough for the State to show that the Defendant is probably guilty. On the other hand, there are very few things in this world that we know with absolute certainty. The State does not have to overcome every possible doubt.

The State must prove each element of the crime(s) by evidence that firmly convinces each of you and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in this matter of the highest importance.

If you find that there is a reasonable doubt that the Defendant is guilty of the crime(s), you must give the Defendant the benefit of that doubt and find the Defendant not guilty of the crime under consideration.

*Id.* at 174.

[29] The trial court also informed the jury, in Preliminary Instruction 11, that it was "the exclusive judges of the evidence, which may be either witness testimony or exhibits." *Id.* at 175.

[30] Turning to the final jury instructions, Final Instruction 8 was an exact copy of Preliminary Instruction 9, and Final Instruction 9 was an exact copy of Preliminary Instruction 10. Final Instruction 15 reminded jurors that they are "the judges of the credibility of the witnesses, and the weight to give their testimony," *Id.* at 195, and Final Instruction 16 reiterated that the jurors should construe all of the instructions together.

[31] The instructions, taken as a whole, corrected any defect in Final Instruction 4. The trial court properly instructed the jury that it was the judge of the facts and the law and set forth the standards by which the jury would determine whether Thrasher was guilty or not guilty.

[32] Thrasher, citing *Mundy v. State*, 247 Ind. 224, 214 N.E.2d 389 (1966), claims that an incorrect jury instruction cannot be remedied by other instructions. *Mundy* is distinguishable. In that case, the Indiana Supreme Court determined the trial court's jury instruction distinguishing murder from manslaughter was erroneous because it appeared to foreclose the possibility of a self-defense instruction. The Court further determined that a separate instruction on self-defense could not cure the error.

[33] The instruction at issue in Thrasher's case is different from the instruction in Mundy's case. Final Instruction 4 informed jurors that based on the

conclusions they reached on the evidence, they could find Thrasher guilty or not guilty. By contrast, the erroneous instruction in *Mundy* effectively excluded self-defense from the jury's deliberations. In any event, in *Barker* the Indiana Supreme Court determined that an error of law in one jury instruction could be ameliorated by other instructions. Thrasher has failed to demonstrate reversible error.

## 2. Admission of the Handgun

[34] Thrasher argues the trial court erred in admitting into evidence the semiautomatic handgun that Agent Rothermich found on his person, claiming it was discovered after he was improperly seized in violation of his rights under the Fourth Amendment.[5] The State responds that under the circumstances, Agent Secor's order to Thrasher to walk to the truck and put his hands on it prior to a second pat down did not violate the Fourth Amendment.

[35] In general, questions regarding the admission of evidence are left to the sound discretion of the trial court and reviewed on appeal only for an abuse of that discretion. *Polson v. State*, 49 N.E.3d 186 (Ind. Ct. App. 2015), *trans. denied*. The constitutionality of a search or seizure is a question of law that we review de novo. *Mullen v. State*, 55 N.E.3d 822 (Ind. Ct. App. 2016).

---

[5] Thrasher does not present a search and seizure claim under the Indiana Constitution.

[36]     We will not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Polson*, 49 N.E.3d 186. We also consider any undisputed evidence that is favorable to the defendant. *Id.* In addition, we may consider foundational evidence introduced at trial in conjunction with evidence from a suppression hearing that is not in direct conflict with the trial evidence. *Id.*

[37]     The Fourth Amendment, which applies to the states through the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[38]     The Fourth Amendment prohibits searches and seizures conducted without a valid warrant. *Mullen*, 55 N.E.3d 822. Evidence obtained without a warrant is not admissible unless the State proves that the search or seizure that revealed the evidence falls into one of the well-delineated exceptions to the warrant requirement. *Id.*

[39]     Officers are allowed to conduct seizures to pat down clothing of individuals for possible weapons in the presence of reasonable suspicion. *Berry v. State*, 121 N.E.3d 633 (Ind. Ct. App. 2019), *trans. denied*. Taking into account the totality of the circumstances, the detaining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*Grayson v. State*, 52 N.E.3d 24 (Ind. Ct. App. 2016), *trans. denied*. "'[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Berry*, 121 N.E.3d at 637 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Reasonable suspicion requires more than an unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *Wilson v. State*, 670 N.E.2d 27 (Ind. Ct. App. 1996).

[40] In this case, Thrasher concedes he voluntarily spoke with the agents and also consented to be patted down. In turn, the State concedes that Thrasher was seized for purposes of the Fourth Amendment when Agent Secor ordered him and his companion to approach the pickup truck and place their hands on it. The question is whether Agent Secor had reasonable suspicion to direct Thrasher to participate in a second pat down after finding the starter pistol.

[41] The agents were in a high-crime area, at night, investigating a report of an unauthorized vehicle parked at a closed car repair business. One car, a gray Hyundai, stood out from the rest because it was newer and in better shape. The Hyundai's hood was warm, indicating it had recently been driven. As the agents prepared to drive away, Thrasher and his companion arrived. A defendant's presence in a high crime area, standing alone, is insufficient to establish reasonable suspicion, but it is a factor in the totality of the circumstances confronting the officer at the time of the stop. *Wilson*, 670 N.E.2d 27. When the agents spoke with Thrasher, he displayed "obvious

anxiety" and "nervousness." Tr. Vol. 2, p. 187. Nervousness alone is not enough to establish reasonable suspicion, but it is also a pertinent factor in the reasonable suspicion analysis. *Polson*, 49 N.E.3d 186.

[42] Thrasher denied having a weapon and agreed to be patted down for officer safety. Despite Thrasher's assurances that he was unarmed, Agent Secor discovered the pistol during the first pat down. Thrasher claimed it was a starter pistol and did not explain why he had it. Although the item was a starter pistol, it was indistinguishable from a regular pistol, and the agent reasonably believed Thrasher had lied to him about having a weapon. During the suppression hearing, Agent Secor explained that Thrasher's behavior was not consistent with the behavior of citizens who lawfully possess firearms: "I've stopped several people during the course of investigations, asked people if they have a gun on them, and their – their response is yes, and I have a permit to carry it." Tr. Vol. II, p. 24.

[43] Under the totality of these circumstances, the agents had sufficient reasonable suspicion to require Thrasher to put his hands on a nearby truck and submit to a second pat down for officer safety. *See Saffold v. State*, 938 N.E.2d 837 (Ind. Ct. App. 2010) (affirming admission of handgun into evidence; officer had reasonable suspicion to conduct second pat down because officer discovered ammunition on Saffold's person during first pat down), *trans. denied*.

[44] Thrasher cites *Pinner v. State*, 74 N.E.3d 226 (Ind. 2017), in support of his claim that the agents lacked reasonable suspicion for a second pat down. In that case,

officers were dispatched to a movie theater to investigate a report of a man with a pistol. Two officers approached Pinner, saying that they had received a report that someone of his description had a pistol. The officers asked Pinner if he had a weapon, and he ultimately said no. They ordered him to stand up and put his hands up, at which time they saw the butt of a gun in a pants pocket.

[45] Pinner was convicted of felonious possession of a handgun without a license, but the Indiana Supreme Court reversed, concluding the officers lacked reasonable suspicion to require Pinner to stand up, thereby revealing the pistol. The facts of *Pinner* are distinguishable from Thrasher's case. The agents asked Thrasher if he would agree to a pat down. Thrasher concedes that he agreed to the pat down, through which the starter pistol was discovered. By contrast, in Pinner's case the officers did not ask Pinner whether he consented to a pat down, they simply ordered him to stand up on scanty evidence that he possessed a firearm. The holding in *Pinner* is not controlling here. In the absence of a Fourth Amendment violation, the trial court in Thrasher's case did not err in admitting the pistol into evidence.

[46] For the reasons stated above, we affirm the judgment of the trial court.

[47] Judgment affirmed.

Vaidik, C.J., and Altice, J., concur.